# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 3, 2008          Decided November 14, 2008

No. 06-3143

UNITED STATES OF AMERICA,
APPELLEE

v.

TIMOTHY MCCRAE WALKER,
ALSO KNOWN AS TIMOTHY SCORPIO WALKER,
ALSO KNOWN AS TIMOTHY MCCREE WALKER,
ALSO KNOWN AS TIMOTHY MCCREE JOHNSON,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 05cr00139-02)

*Robert S. Becker*, appointed by the court, argued the cause for the appellant.

*Stephanie Brooker*, Assistant United States Attorney, argued the cause for the appellee. *Jeffrey A. Taylor*, United States Attorney, and *Roy W. McLeese*, III and *Thomas J. Tourish, Jr.*, Assistant United States Attorneys, were on brief.

Before: HENDERSON, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Timothy McCrae Walker appeals his convictions on one count of violating 26 U.S.C. § 5861(d) (possession of unregistered firearm) and one count of violating 18 U.S.C. § 922(g)(1) (felon in possession of firearm). Walker argues that (1) he was not afforded a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161; (2) the jury was improperly instructed on the elements of constructive possession; (3) both convictions were based on insufficient evidence; and (4) his jury *venire* did not represent a "fair cross section of the community." Because our holding in *United States v. Bryant*, 523 F.3d 349 (D.C. Cir. 2008), requires the reversal of the section 5861(d) conviction, we remand the section 5861(d) count for dismissal with or without prejudice at the district court's option. *Id.* at 361. We reject Walker's Speedy Trial Act challenge to the section 922(g)(1) conviction and affirm that conviction as against the other challenges as well.

## I.

At about 3:00 a.m. on February 9, 2005, Officer Charles Monk, an off-duty Metropolitan Police Department (MPD) patrolman working as a part-time security guard, observed the driver of a black Land Rover sport utility vehicle (SUV) illegally park in a bus zone in the 800 block of 5th Street, N.W. *Bryant*, 523 F.3d at 351. Monk saw two young black males exit the vehicle. They were both wearing ski masks and, although the weather was "unusually mild" that night, both wore "heavy black winter coats." *Id.* Monk watched as the driver (later identified as Walker) reached into the SUV, retrieved a bulky item and slid it into his coat. *Id.* The driver walked, "kind of limping," across the street and motioned to the passenger to join him. *Id.* at 352; *see also* Transcript of Trial at 50, *United States v. Walker*, Cr. No. 05-139 (D.D.C. Mar. 21, 2006) (Tr.). They walked up to a charter bus parked in the 500 block of H Street, N.W. but the bus driver would not let them on the bus. *Bryant*,

523 F.3d at 352. The two then walked back towards the SUV, passed it and continued into a nearby alley where they stopped and looked around. *Id.*; Tr. at 53-54. They then returned to the SUV and Walker took the item out of his coat, put it back into the vehicle and the two drove away. *Bryant*, 523 F.3d at 352. Not more than five minutes later, however, they returned and this time Walker parked the SUV legally. *Id.* They exited the vehicle, Walker again retrieved the item and put it inside his coat, pulled a ski mask down over his face (as did his passenger, later identified as William Bryant), and both he and Bryant started walking across the street. *Id.*

Given this suspicious activity, Monk called for back-up to investigate the two men. *Id.* Both men were "looking around nervously." *Id.* When a marked FBI vehicle drove by them, the two men lifted their ski masks. *Id.* Then two marked MPD vehicles arrived at the scene, one driven by Officer James Burgess. *Id.* Burgess's partner, Officer Steven Greene, testified that once the two men saw the MPD patrol car, they began to walk away from it and, on turning the corner, began to walk at a faster than normal pace. *Id.* Walker walked stiff legged, with a limp, as if trying to conceal the item inside his coat. *Id.* Burgess and Greene pulled their patrol car up behind the two men and got out to approach them. *Id.* Walker began running away and Greene followed him. *Id.* When Walker was finally cornered, he was ordered to lie down and, as he was lowering himself to the ground, Greene saw him drop what he was carrying under his coat into an exterior window basin. *Id.* Another MPD officer later retrieved a sawed-off Stevens .12-gauge shotgun loaded with one .12-gauge shotgun shell from the basin. *Id.* at 352-53. An MPD officer, examining the SUV, looked in the passenger window and saw a sawed-off shotgun on the passenger side floorboard partially covered by some objects. *Id.*; Tr. at 210. The shotgun was later identified as a sawed-off Harrington & Richardson .20-gauge shotgun. *Bryant*, 523 F.3d at 352-53. The Harrington & Richardson shotgun had been

modified such that it was required to be registered in the National Firearms Registration and Transfer Record but was not so registered. *Id.* at 353.

Both men were arrested at the scene and appeared before a magistrate judge the next day, February 10, 2005. On that day, the government filed a complaint against Walker and Bryant charging each with a violation of 26 U.S.C. § 5861(d) for possessing both sawed-off shotguns without having registered the weapons. On March 16, 2005, pursuant to Federal Rule of Criminal Procedure 48(a),[1] the government moved to dismiss the complaint without prejudice. The district court granted the motion but the record does not reveal the reason therefor. On April 21, 2005, the grand jury indicted Walker and Bryant on one count of unlawful possession of two unregistered firearms in violation of 26 U.S.C. § 5861(d).[2] Walker was arraigned on June 10, 2005. On September 1, 2005, Walker moved to sever his case from Bryant's, which motion was denied on October 7, 2005.

On February 16, 2006, the government filed a superseding indictment charging both Walker and Bryant with one count of possessing an unregistered firearm (the Harrington & Richardson shotgun) in violation of section 5861(d) and one count of felon in possession (of both shotguns) in violation of section 922(g)(1). Arraignment on the superseding indictment occurred on February 17, 2006, at which time Walker moved to

---

[1]Fed. R. Crim. P. 48(a) provides in part: "The government may, with leave of court, dismiss an indictment, information, or complaint . . . ."

[2]As we noted in *Bryant*, "[t]his indictment was defective, because it specified that [Bryant] and Walker had possessed both shotguns without properly registering them; however, only the Harrington and Richardson shotgun had to be registered . . . ." 523 F.3d at 353.

dismiss it, alleging the violation of his right to a speedy trial. The district court denied the motion on March 14, 2006. Following the trial, which commenced on March 20, 2006, Walker was convicted on both counts and, on August 29, 2006, was sentenced to 60 months' imprisonment. Walker now appeals.

## II.

### A.  Speedy Trial Act

We first address Walker's claim that both his section 5861(d) and section 922(g)(1) convictions should be reversed because over 70 non-excludable days elapsed between the original indictment and his trial in violation of the Speedy Trial Act, 18 U.S.C. § 3161 (STA).[3]  We review a STA challenge "*de novo* on matters of law and for clear error as to findings of fact." *United States v. Sanders*, 485 F.3d 654, 656 (D.C. Cir. 2007) (citations omitted).  The parties agree that our decision in *United States v. Bryant*, 523 F.3d 349 (D.C. Cir. 2008), controls Walker's section 5861(d) conviction.  In that case, we reversed Bryant's section 5861(d) conviction because "both parties agree that at least 32 days had accrued on the speedy trial clock as of August 8, [2005] and it is clear that at least 39 additional, non-excludable days accrued between November 27, 2005 and February 16, 2006." *Id.* at 361.

[3]The Speedy Trial Act provides in part:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

Because "[a]ll defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant," *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986), Walker's section 5861(d) conviction must also be reversed.

Unlike Bryant, however, Walker challenges the section 922(g)(1) count on the ground that his conviction thereon violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.[4] He argues that the section 922(g)(1) count in the superseding indictment is an "offense required to be joined" with the section 5861(d) count charged in the original indictment pursuant to 18 U.S.C. § 3161(h)(5), which excludes from speedy trial calculation "any period of delay from the date the [original] charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge" so long as "the information or indictment is dismissed upon motion [by the government] and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense." Walker claims the section 922(g)(1) count was required to be joined with the section 5861(d) count because "the Double Jeopardy Clause . . . would have precluded the government from trying him serially for violations of [section] 5861(d) and [section] 922(g)." Brief of Appellant at 23 (Br. of Appellant).

The United States Supreme Court has held regarding the Double Jeopardy Clause that if "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284

---

[4]The Double Jeopardy Clause bars any person from being "subject for the same offence to be twice put in jeopardy of life or limb."

U.S. 299, 304 (1932), *cited in United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999). A violation of section 922(g)(1) requires the government to prove that a defendant was "convicted in any court [of] a crime punishable by imprisonment for a term exceeding one year" and that the defendant possessed (or shipped or transported) "in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). To violate section 5861(d) the defendant must "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). Plainly, the government must prove different facts to establish each crime. Section 5861(d) requires that the firearm be unregistered while section 922(g)(1) does not; section 922(g)(1) requires that the defendant be a felon and section 5861(d) does not. Accordingly, the section 922(g)(1) count was not an "offense required to be joined" with the section 5861(d) count under 18 U.S.C. § 3161(h)(5) and a new speedy trial clock began for the section 922(g)(1) charge on February 16, 2006, the date of the superseding indictment. *See United States v. Alford*, 142 F.3d 825, 829 (5th Cir. 1998) (new speedy-trial clock "'begins for new offenses charged in the superseding indictment [that the double jeopardy clause would not require the government to join with the original charges], when the indictment retains some of the original charges'" (quoting *United States v. Gonzalez*, 897 F.2d 1312, 1316 (5th Cir. 1990))) (alteration in original); *United States v. Lattany*, 982 F.2d 866, 872 n.7 (3d Cir. 1992) ("If the subsequent [indictment] charges a new offense that did not have to be joined with the original charges, then the subsequent [indictment] commences a new, independent speedy trial period.").

Walker also argues that his section 922(g)(1) conviction should be reversed because the STA barred the filing of the charge via a superseding indictment on February 16, 2006. Specifically, Walker argues that "if the 70-day speedy trial clock expired as to the § 5861(d) count before [the government] filed

the superseding indictment adding the § 922(g) count, the § 922(g) count was not saved from dismissal because it was filed more than 30 days after [Walker's] arrest." Reply Br. of Appellant at 7. Walker is correct that the speedy trial clock expired as to the section 5861(d) count before the government filed the superseding indictment. In *Bryant*, we held that even if the speedy trial clock began as late as June 11, 2005–almost six weeks later than Walker alleges it should have begun–over 70 days had elapsed by February 16, 2006. *Bryant*, 523 F.3d at 357-58, 361. But the expiration of the speedy trial clock before February 16, 2006 does not mean that the section 922(g)(1) count of the superseding indictment should have been dismissed.

18 U.S.C. § 3161(b) provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." If no indictment is filed within this time period, 18 U.S.C. § 3162(a)(1) provides that "such charge against that individual . . . shall be dismissed or otherwise dropped." A superseding indictment filed more than thirty days after arrest, however, does not violate section 3161(b) so long as the original indictment was filed within the required thirty-day time frame. *See United States v. Hemmings*, 258 F.3d 587, 591-92 (7th Cir. 2001) (listing cases). In that case, the Seventh Circuit held that a superseding indictment filed after the thirty-day time period specified in section 3161(b) elapsed did not violate the STA because a timely indictment had originally been filed within the thirty-day period and thus the case was not one "in which *no* indictment was filed within the thirty-day period." *Id.* at 592 (emphasis in original). Likewise, in *United States v. Mosquera*, 95 F.3d 1012, 1013 (11th Cir. 1996), the Eleventh Circuit held that a superseding indictment filed on March 23, 1995 did not violate section 3161(b) when the original indictment was filed on November 3, 1994, the trial on the original indictment (resulting in a hung jury) was held on

March 16, 1995, and the superseding indictment alleged new counts against the defendant. *Id.* at 1013-14. The court reasoned that the STA is not a "statute of limitations" and does not require that an individual under arrest be indicted within thirty days on "every crime known to the government." *Id.* at 1013.

Although here, unlike in *Hemmings*, no indictment was filed within 30 days of Walker's February 9, 2005 arrest, Walker did not challenge the original indictment as untimely in the district court and therefore "we review the district court's decision not to dismiss (sua sponte) on [this ground] for plain error only." *United States v. Taylor*, 497 F.3d 673, 676 (D.C. Cir. 2007). Under that standard, "we will correct a district court's error only if (1) there is in fact an error to correct; (2) the error is 'plain'; (3) it 'affects substantial rights'; and (4) it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)). Walker was arrested on February 9, 2005 and appeared before the magistrate judge the next day at which time the government filed the complaint against them both. *See* Fed. R. Crim. P. 5(b). The government moved to dismiss the complaint on March 17, 2005, which motion the district court granted without prejudice. The original indictment, filed April 21, 2005, was therefore untimely under 18 U.S.C. § 3161(b) because it was filed over 30 days from the date of arrest.

In *United States v. Bittle*, 699 F.2d 1201, 1205 (D.C. Cir. 1983), we held that "after the dismissal of a complaint, the Act's time limits run anew from the date of the filing of the subsequent complaint or indictment." In that case, defendant Bittle was arrested on December 10, 1981 and charged with violating 18 U.S.C. § 495 (forging and uttering a check) by complaint the following day. *Id.* at 1202. On January 22, 1982, the complaint was dismissed but on January 28, 1982, an "original indictment" was returned charging Bittle with two

violations of section 495 and, additionally, one violation of 18 U.S.C. § 1708 (possession of stolen mail matter). *Id.* Bittle moved to dismiss the indictment under the STA, which motion the court denied. *Id.* Interpreting 18 U.S.C. § 3161(d)(1),[5] we upheld the conviction, concluding that even though the indictment was filed more than thirty days after the arrest, it was timely under section 3161(b) because the complaint should have been dismissed without prejudice and, under section 3161(d)(1), the thirty-day period described in section 3161(b) began to run anew from the date of the indictment. *Id.* at 1204, 1208. The chronology here is similar (the district court also dismissed the complaint without prejudice) and, consequently, the district court did not commit plain error in failing to dismiss Walker's

---

[5]18 U.S.C. § 3161(d)(1) provides:

If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

Subsection (b) requires "[a]ny information or indictment charging an individual with the commission of an offense" to be filed within thirty days of the date of arrest or the date the defendant was served with a summons. *Id.* § 3161(b). Subsection (c) requires the trial to commence within seventy days from either the date of filing and making public the information or indictment or "from the date the defendant has appeared before a judicial officer . . . , whichever date last occurs." *Id.* § 3161(c)(1).

original indictment sua sponte on this ground. As in *Bittle*, section 3161(b)'s thirty-day clock began anew as of the date of the original indictment. The superseding indictment likewise did not violate section 3161(b). Because the STA is not "a statute of limitations," the fact that the speedy trial clock had run on the original indictment does not make the superseding indictment charging a different offense untimely under the STA.

## B. *Sufficiency of Evidence*

We next address Walker's argument that there was insufficient evidence for a reasonable jury to find that he possessed the Harrington & Richardson shotgun located in the SUV.[6] In reviewing for sufficiency of the evidence, the court's "inquiry is limited to the question of whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Dingle*, 114 F.3d 307, 310 (D.C. Cir. 1997) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The court "views the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor." *Id.*

It is undisputed that both guns were transported in or affected interstate commerce and that Walker had been convicted of a felony. Thus, the government need only show that Walker knowingly possessed the Harrington & Richardson

---

[6] Although Walker argued that his section 5861(d) conviction should also be reversed based on insufficient evidence, Br. of Appellant at 23-32, that conviction, as already noted, is vacated per our *Bryant* holding.

shotgun to sustain his section 922(g)(1) conviction as to that gun.[7]

"Criminal possession of a firearm may be either actual or constructive." *United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003). To prove constructive possession, the government must show that Walker "knew of, and was in a position to exercise dominion and control over, the contraband, either personally *or through others*." *Bryant*, 523 F.3d at 354-55 (citations and internal quotation marks omitted) (emphasis in original). Proximity to a weapon, coupled with some other factor such as "connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise" may suffice to show dominion and control over a weapon. *Alexander*, 331 F.3d at 127 (quoting *United States v. Moore*, 104 F.3d 377, 381 (D.C. Cir. 1997)). We have already determined that Bryant possessed both the Harrington & Richardson shotgun and the Stevens .12-gauge shotgun. *Bryant*, 523 F.3d at 356. In reaching this conclusion, we noted "[Bryant's] proximity to both guns, coupled with his suspicious attire, his initial evasive conduct towards the police officers, and the evidence that [he] was acting in concert with

---

[7]Although there was plainly sufficient evidence to support Walker's actual possession of the Stevens .12-gauge shotgun recovered from the window basin, we review the sufficiency of the evidence regarding the Harrington & Richardson shotgun because, at sentencing, possession of the latter increased the base offense level inasmuch as it had been modified to require registration. *See* U.S. Sentencing Guidelines Manual § 2K2.1(a)(3), (4) (2007); Reply Br. of Appellant at 9 (noting that district court applied base offense level of 22–subsequently reduced two levels for acceptance of responsibility–but, if this Court determined there was insufficient evidence to support Walker's possession of Harrington & Richardson shotgun, base offense level would be reduced to 20).

[Walker,] who was actually carrying one of the weapons on his person." *Id.* at 356.

Likewise, there was sufficient evidence to show that Walker too was in "close proximity" to, and exercised dominion and control over, the Harrington & Richardson shotgun. Although the weapon was located on the passenger's side floorboard of the SUV, Walker, the driver, was in close proximity to it. Moreover, as the driver, Walker "is held to a higher level of accountability for [the vehicle's] contents." *United States v. Gibbs*, 904 F.2d 52, 57 (D.C. Cir. 1990). Indeed, Walker had control over the SUV at all times during the incident (as shown by his driving and parking the vehicle). When coupled with the fact that there was ample evidence that Walker and Bryant were working in concert, *see Bryant*, 523 F.3d at 356, a rational juror could find that Walker constructively possessed the Harrington & Richardson shotgun.

### C. *Walker's Remaining Arguments*

*Bryant* disposes of Walker's remaining arguments that (1) the district court erred in instructing the jury on the element of "control" in the context of constructive possession, and (2) his jury *venire* was not representative of the community in violation of the Jury Selection and Service Act, 28 U.S.C. § 1861. In *Bryant*, we held that the district court's supplemental jury charge in which it reread the original jury instruction and also recited language from three of this Court's opinions discussing "control" did not confuse the jury. *Id.* at 357. Walker raises the same argument and, similarly, it fails.

In *Bryant*, we held that Bryant failed to show a violation of the "right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes" under the Jury Selection and Service Act, 28 U.S.C. § 1861. *Bryant*, 523 F.3d at 361-62. We reached this conclusion after finding that Bryant had failed to

prove that the underrepresentation of blacks in the *venire* was due to a "'systematic exclusion of the group in the jury selection process,'" *id.* at 362 (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)), because both of the cases Bryant relied on "concerned an alleged underrepresentation of whites, whereas this case involves an alleged underrepresentation of blacks," and Bryant relied on "two cases decided more than 10 years ago, in combination with [his] own single venire." *Id.* Walker argues that "[viewing] this case with [the cases relied on in *Bryant*] it is clear that the procedure for empaneling *venires* in the District Court is seriously flawed [because the] failure to produce *venires* representing a 'fair cross section of the community' is not isolated to a few cases and is not the result of case-specific factors." Br. of Appellant at 37. We rejected this argument in *Bryant*. 523 F.3d at 362.

For the foregoing reasons, we affirm Walker's section 922(g)(1) conviction. We remand Walker's section 5861(d) conviction for the district court to "dismiss Count One of the superseding indictment after determining whether the dismissal should occur with or without prejudice." *Id.*

*So ordered.*