# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

Nos. 25-2102, 25-2103 & 25-2104

UNITED STATES

v.

KENAN THOMAS,
Appellant in 25-2102, 25-2103

&

ROMEO WALTER,
Appellant in 25-2104

_____

Appeal from District Court, D.V.I.
Judge Robert A. Molloy
Nos. 3:20-cr-00039-001 & 3:20-cr-00039-002

Before:  KRAUSE, CHUNG, and SMITH, *Circuit Judges*
Submitted Under Third Circuit L.A.R. 34.1(a) on May 12, 2026
Decided: May 29, 2026

_____

NONPRECEDENTIAL OPINION[*]

CHUNG, *Circuit Judge*.  Kenan Thomas and Romeo Walter ("Defendants") each were found guilty by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and unauthorized possession of a firearm in violation of 14 V.I.C. § 2253(a). Defendants unsuccessfully filed motions for judgment of acquittal.  On appeal, they

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

challenge the denial of their motions and argue that their sentences are procedurally unreasonable. For the reasons set forth below, we will affirm in all respects.

## I. BACKGROUND[1]

Thomas and Walter are brothers, whose firearm convictions trace back to a run-in with police in St. Thomas on April 8, 2020. That afternoon, Virgin Islands police officers in marked vehicles arrived to patrol an area known as Jah Yard. A group of four men were gathered there[2] and proceeded to run away. Two officers, Officer Kyle Gabriel and Sergeant Alester Carty, pursued them on foot. At trial, these officers testified that one of the men, whom Officer Carty identified as Thomas, carried a black backpack and a black duffel bag. Another man, whom the jury was invited to identify from video footage as Walter,[3] had his arm in a sling. During the chase, Sergeant Carty noticed a gun sticking out of the back of Thomas's orange-colored boxer. Refusing Sergeant Carty's command to stop, the group arrived at a green house with an outdoor patio on the second and third stories. Officer Gabriel then observed the men working together to move the bags (and themselves) from the ground level to the second story patio. Surveillance video from the home, which was viewed by the jury, shows four men scaling the patio—two men ascended

---

[1]   Because we write for the parties, we recite only the facts pertinent to our decision.

[2]   Of the three officers on the scene who testified, two recalled seeing only three men. Officer Kyle Gabriel recalled seeing four men. Surveillance video recorded a group of four men.

[3]   Walter argues that there was insufficient evidence that he was present in St. Thomas on April 8, 2020. We address this argument below.

2

first, and each received a bag from below, then Thomas climbed up third, removed a gun from his waistband and placed it on the black duffel bag, and proceeded to help pull up Walter last. A resident of the home testified that he saw the group on the second story patio through the glass sliding door of his home, and his mother screamed in fright. Officer Gabriel heard those screams coming from inside the residence, and then saw Thomas throw the bags back down to the ground floor.

Officer Gabriel proceeded to chase Thomas, who was then alone with both bags in hand, until Thomas leapt over a fence and entered a shanty. Shortly thereafter, Thomas emerged from the shanty without the bags, and Sergeant Carty placed him under arrest. Walter was not arrested until several months later.[4]

The bags were recovered from the shanty. The backpack contained an AR-type pistol, three magazines, and several bullets wrapped in a red bandana, while the duffel bag contained an AK-type pistol, two Glock handguns, and four magazines. Testing revealed "extremely strong" evidence that Thomas's DNA was on the backpack and the red bandana. Walter Appendix ("WA") 635, 638. Test results also reflected a "familial flag," WA647, for Thomas's DNA on the AR-type pistol and an olive green magazine found in the backpack, as well as a Glock 10 mm magazine found in the duffel bag. This DNA evidence was weaker, indicating the possibility that the DNA belonged to an immediate family member, either in addition to or in lieu of Thomas. As to Walter, DNA testing

---

[4] Two other co-defendants, Akeem Dijhani Julien and Nijohntea Walker, pleaded guilty to related offenses and do not appeal.

3

revealed "extremely strong" evidence that his DNA was on the duffel bag, one of the Glock handguns, and two other magazines—one for the AK-style pistol and the other a 7.62 x 39 magazine. WA638, 642, 648, 650. These items were all recovered from the duffel bag, as were two other items reflecting a familial flag for Walter's DNA: a Glock 45 magazine, and the same Glock 10 mm magazine that reflected a familial flag for Thomas's DNA.

The jury found both Thomas and Walter guilty of the federal offense of being a felon in possession of a firearm (Counts One and Two, respectively), and the territorial offense of unauthorized possession of a firearm (Count Six). Thomas received a sentence of 120 months' imprisonment on the federal offense and fifteen years on the territorial offense, to run concurrently. Walter received a sentence of 71 months' imprisonment on the federal offense and fifteen years on the territorial offense, to run concurrently. Defendants timely appealed, and their appeals have been consolidated for our review.[5]

## II. DISCUSSION[6]

A. <u>Motion for Judgment of Acquittal</u>

We review the grant or denial of a motion for judgment of acquittal de novo and "independently appl[y] the same standard as the district court." <u>United States v. Brodie</u>, 403 F.3d 123, 133 (3d Cir. 2005). Thus, like the District Court, we "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact

---

[5]   Thomas's appeals, taken separately from his federal and local sentences and judgment, 25-2102 and 25-2103, have been consolidated for all purposes.

[6]   The District Court had jurisdiction pursuant to 48 U.S.C. § 1612(a), (c) and 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

4

could have found proof of guilt[] beyond a reasonable doubt based on the available evidence. A finding of insufficiency should be confined to cases where the prosecution's failure is clear." Id. (citation modified). In conducting this review, "we examine the totality of the evidence, both direct and circumstantial," United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003), but we must be mindful "not to usurp the role of the jury" by re-weighing the evidence, Brodie, 403 F.3d at 133.

Both Defendants challenge the sufficiency of the evidence as to their knowing possession of the firearms recovered from the black backpack and duffel bag. Walter also argues that there was insufficient evidence to establish his presence in St. Thomas at the time of the offense. To prove a violation of Section 922(g)(1), the government must prove, among other things, that the defendant knowingly possessed a firearm. Rehaif v. United States, 588 U.S. 225, 227 (2019) (citing 18 U.S.C. § 922(g)). Under V.I.C. § 2253(a), the government must prove that, "unless otherwise authorized by law, [the defendant] has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm," after having been convicted of a felony.

For both offenses, the government can prove (1) actual possession by showing that the defendant exercised "direct physical control" over the weapon, or (2) constructive possession by showing that he "has the power and intent to exercise control" over the weapon. Henderson v. United States, 575 U.S. 622, 626 (2015); see also Heath v. People, 2024 VI 17, ⁋ 40; 14 V.I.C. § 2253(d)(5) (defining constructive possession as "having the power and the intention at any given time to exercise dominion or actual control over the firearm either directly or through another person"). Constructive possession can be joint

5

and may be proven by circumstantial evidence.  See United States v. Carey, 72 F.4th 521, 530 n.12 (3d Cir. 2023); Codrington v. People, 57 V.I. 176, 199 (V.I. 2012) ("Like any other fact, constructive possession can be proven by circumstantial evidence."). "Proximity alone is not enough" to establish constructive possession, however; "something more" is required.  United States v. Benjamin, 711 F.3d 371, 376-77 (3d Cir. 2013) (internal quotation marks and citations omitted).  Evidence to support constructive possession may include evidence demonstrating the defendant used the item in the past, id. at 377; "evidence that the defendant attempted to hide or to destroy the contraband," United States v. Foster, 891 F.3d 93, 111 (3d Cir. 2018) (quoting United States v. Jenkins, 90 F.3d 814, 818 (3d Cir. 1996)); or a "connection with [the] gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise," United States v. Walker, 545 F.3d 1081, 1088 (D.C. Cir. 2008) (quoting United States v. Alexander, 331 F.3d 116, 127 (D.C. Cir. 2003)).

    1.  Thomas's Motion for Judgment of Acquittal

For both offenses, Thomas argues that the evidence was insufficient to establish his knowing possession of the firearms recovered from the black backpack and duffel bag and emphasizes that the DNA evidence did not definitively connect him to those firearms.  We are unpersuaded.

There was ample evidence from which a rational jury could find Thomas knowingly possessed the firearms.  This includes eyewitness testimony that Thomas had a gun tucked in his waistband, surveillance video depicting Thomas removing a gun from his waistband on the second story patio, testimony describing Thomas's actual possession of both bags

6

and his efforts to conceal them, and evidence of Thomas's DNA on the black backpack and a red bandana full of ammunition.

Thomas highlights that the DNA familial flag evidence, linking Thomas to the AR-style pistol and the olive green magazine found in the backpack, as well as the Glock 10 mm magazine found in the duffel bag, is weaker. This is an argument regarding weight, not sufficiency. Even assigning reduced weight to that evidence, there was no clear failure of overall proof, and a rational jury could have found that Thomas knowingly possessed the firearms. Brodie, 403 F.3d at 133.[7]

    2.  Walter's Motion for Judgment of Acquittal

Walter only challenges his federal conviction on appeal. He argues that the evidence was insufficient for a jury to find that he was even present during the incident, considering that no witness to the offense identified him and that two officers recalled seeing only three men. He further argues that the evidence was insufficient to support his knowing possession of firearms because the surveillance video "d[id] not depict [Walter] touching the bags or . . . firearms," and because the DNA evidence did not reflect how or when his DNA was deposited on the items in question. W. Br. 32. We disagree.

---

[7]   Thomas also disputes whether the officers' search of the bags and his arrest were supported by probable cause. This issue—litigated before the District Court on a motion to suppress—has no bearing on the sufficiency of the evidence. See McDaniel v. Brown, 558 U.S. 120, 131 (2010) (instructing that when examining the sufficiency of the evidence, we "must consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously" (internal quotation marks and citation omitted)).

The evidence sufficed to establish Walter's presence at the scene because a rational jury could compare his appearance in the courtroom to that of the man in the video wearing a sling and conclude it was Walter. Regarding Walter's knowing possession, a rational jury could rely on the video evidence and witness testimony to conclude that Walter was part of the group fleeing police with the two bags, that members of his group climbed to the second story patio, and that they received the bags from Walter and Thomas, who, soon after, climbed up from the ground floor. In addition, Walter's DNA was found on the duffel bag and several of the items recovered therein: the Glock 20, a magazine that fit the AK-style firearm, and three other magazines (two of which raised a familial flag).

While a jury could have adopted Walter's argument that the DNA evidence only reflected that his DNA was deposited on the items some unknown way, at some unknown point in time, it need not have. See Brodie, 403 F.3d at 133. Although mere proximity is not enough to establish constructive possession, Benjamin, 711 F.3d at 376, the government presented substantial evidence of additional factors from which the jury could conclude that Walter constructively possessed firearms on the date in question—i.e., Walter's flight from the police with the group, the joint efforts to abscond with the bags, and the DNA evidence. See Foster, 891 F.3d at 111 (explaining that "evidence that the defendant attempted to hide or to destroy the contraband" can show constructive possession (quoting Jenkins, 90 F.3d at 818)); Walker, 545 F.3d at 1088. Considering the totality of the evidence, a rational jury could conclude that Walter knew there were firearms in the bags and that he had the power and intent to exercise control over the duffel bag and at least one of the firearms contained therein.

B. Reasonableness of Defendants' Sentences

Finally, we review Defendants' challenges to the procedural reasonableness[8] of their sentences for abuse of discretion, such as "if a district court based its decision on a clearly erroneous factual conclusion." United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). Defendants contend that the sentencing court erred when considering "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as required by 18 U.S.C. § 3553(a)(6). That is, they argue that the District Court incorrectly concluded that the sentences imposed would not create unwarranted disparities between their own sentences and those of their co-defendants.

District courts are "not require[d] … to consider sentencing disparity among co-defendants," though they are permitted to do so. United States v. Parker, 462 F.3d 273, 277 (3d Cir. 2006). Here, the District Court did address potential disparities among the co-defendants when considering Section 3553(a)(6) and found that Walter and Thomas were not similarly situated to their co-defendants because their co-defendants pleaded guilty to different offenses, had less serious criminal histories, accepted responsibility, and had lower Guidelines ranges. This finding was not clearly erroneous, and the District Court

---

[8] Defendants assert that their sentences were both procedurally and substantively unreasonable. However, the only error they allege is that the sentencing court incorrectly applied 18 U.S.C. § 3553(a)(6). This amounts to a claim of procedural error. See United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc) (noting that procedural errors include "failing to consider the § 3553(a) factors" or "selecting a sentence based on clearly erroneous facts").

9

did not abuse its discretion when it accordingly determined that the sentences imposed did not create an unwarranted disparity.

\* \* \* \* \*

For these reasons, we will affirm the judgments as to both Defendants.