**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2906
_____

UNITED STATES OF AMERICA

v.

NATHANIEL BENJAMIN,
a/k/a James Burch


NATHANIEL BENJAMIN,
                                        Appellant


_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-10-cr-00131-001)
District Judge:  Hon. Berle M. Schiller

Argued:  September 11, 2012
_____

Before:  SMITH, CHAGARES, and GARTH, <u>Circuit Judges</u>.

(Filed: March 26, 2013)

Sarah S. Gannett, Esq. (Argued)
Brett G. Sweitzer, Esq.
Leigh M. Skipper, Esq.
Federal Community Defender Office for the Eastern District
of Pennsylvania
Suite 540 West – Curtis Center
601 Walnut Street
Philadelphia, PA  19106
          <u>Attorneys for Appellant</u>

Zane David Memeger, Esq.
Robert A. Zauzmer, Esq.
Eric B., Henson, Esq. (Argued)
Office of the Attorney General
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106

Attorneys for Appellee
_____

OPINION
_____

CHAGARES, Circuit Judge.

Nathaniel Benjamin raises four issues on appeal from the District Court's judgment of conviction and sentence. First, Benjamin argues that there was insufficient evidence supporting one of his felon-in-possession convictions and his conviction for possession with intent to distribute marijuana and cocaine base. Second, Benjamin contends that if the evidence was sufficient to convict him of gun possession in the house, then his conviction on that count should have merged with his conviction on another felon-in-possession charge involving the same gun at a gun range. Third, Benjamin argues the District Court abused its discretion by allowing repeated references at trial to Benjamin's parole status. Fourth, Benjamin contends that the felon-in-possession statute is facially unconstitutional or, in the alternative, unconstitutional as applied to him. For the reasons that follow, we will affirm the judgment of the District Court in part and remand in part.

I.

At the time of his arrest, Benjamin was on parole and living with his fiancée, Stacy Esprit, her four children, and her infant grandchild in Norristown, Pennsylvania. Benjamin supplemented his income by buying and refurbishing cars. Although his own driver's license was suspended, he obtained a license under the name "James Burch," using his own photograph. Benjamin's parole officer, who knew that

Benjamin's driver's license had been suspended, observed Benjamin driving, and he organized a search of Esprit's home where Benjamin was residing.

In the search of the master bedroom, agents found a bag underneath the foot of the bed containing hearing and eye protection, targets from a shooting range, receipts for ammunition, a postcard with Benjamin's name and address on it, and a handgun trigger lock. Agents found a box of 9 millimeter ammunition next to maxi-pads and a gold purse in the master bedroom closet. On the right side of the bed, agents found an envelope containing car titles in the name of James Burch, as well as the James Burch driver's license, an identification card for Nathanial Benjamin, Benjamin's social security card, and receipts for payment on an auto loan for James Burch. Agents also found a notebook that, according to the Government's narcotics trafficking expert, contained car information, cell phone information, and illegal drug information. The District Court sustained some objections to the expert's testimony as speculative, but allowed him to testify that he understood the ledger to contain information about illegal drugs as well as other items. Agents also found a digital cooking scale just to the right of the bed, which Esprit testified she did not recognize.

In the basement, Esprit directed agents to a loaded 9 millimeter Kel-Tec handgun in a black bag underneath a flowered blanket. The bag also contained Esprit's permit to carry a concealed handgun and a box of empty ammunition. At trial, Esprit testified that she had the gun on her person and was folding laundry in the basement when the agents knocked at the door. When she came upstairs, Benjamin told her that his parole officer was at the door, at which point she went back to the basement and put the gun on the table with clothes on top of it. Esprit also testified that she knew Benjamin was not allowed to be in the vicinity of a gun, and explained that she always carried the gun with her and had loaded it with ammunition that day because she was planning on going to the shooting range.

At trial, Esprit explained that she had gone with Benjamin to purchase the handgun for herself because she wanted to be able to protect herself from an abusive ex-

3

spouse who was soon to be released from prison, and that Benjamin suggested a different model than the gun she purchased. According to Esprit, the day after the gun purchase, Benjamin accompanied her to the gun range where he used the name James Burch to fill out paperwork. Esprit's testimony that Benjamin fired two clips at the range forms the basis for Benjamin's first conviction of being a felon in possession of a firearm.

Also in the basement, agents discovered a pit bull in a cage and, stacked by the back door, the stereo and car equipment Benjamin used to fix cars. In ceiling joists near the back door, agents found bags containing 6.62 grams of cocaine base and 326.93 grams of marijuana. Esprit denied any knowledge of the drugs in the basement. She testified that none of her children had ever had any problems with drugs and that she had a zero tolerance policy for drugs. She also stated that her granddaughter's father, her two godsons, and their friend used to visit the house and would congregate in the basement to play pool and air hockey.

When they searched the kitchen, agents found an open box of nitrile gloves, which Esprit testified she used for cleaning. In Benjamin's cars, agents also found latex and nitrile gloves. The Government's narcotics expert testified that individuals on parole used those types of gloves when packaging narcotics so that they would not be caught with drugs present in their system in a random drug test. He also testified that the facts and circumstances of the case were consistent with distribution rather than personal use. He based his opinion on how the drugs were packaged, the amount of drugs, the presence of the scale, and the lack of any crack pipe in the house. The drug expert further stated that he believed Benjamin to be the drug dealer based on the nitrile gloves in Benjamin's car, Benjamin's familiarity with guns, the presence of the pit bull, Benjamin's use of the alias "James Burch," Benjamin's use of multiple vehicles registered to the alias, and the presence of the notebook that the expert believed to be a drug ledger.

Benjamin was charged with one count of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B); one count of

4

possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D); and two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[1] The case was tried to a jury, with the felon-in-possession charges bifurcated from the first set of charges. Benjamin was convicted on all counts on March 9, 2011.

Benjamin filed a post-trial motion challenging the sufficiency of the evidence and certain evidentiary rulings, which the District Court denied on July 5, 2011. On July 13, 2011, the District Court sentenced Benjamin to twenty years of imprisonment, consisting of twenty years on the cocaine base count and ten years each on the other counts, running concurrently. The District Court further sentenced Benjamin to eight years of supervised release, consisting of eight years on the cocaine base count, four years on the marijuana count, and three years on each felon-in-possession count, all to run concurrently, as well as a fine of $2,000 and a special assessment of $400. Benjamin timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. Benjamin raises four issues on appeal. We will address each in turn.

## A.

Benjamin does not challenge his conviction for being a felon in possession of a firearm at the gun range, but argues that the Government's evidence on the second felon-in-possession charge, for possession inside the house, was

---

[1] 18 U.S.C. § 922(g)(1) provides, in pertinent part: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

insufficient. Benjamin further contends that the evidence offered to support his convictions on the counts of possession with intent to distribute drugs was insufficient.

"In reviewing a jury verdict for sufficiency of the evidence, we 'must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt.'" United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993) (quoting United States v. Frorup, 963 F.2d 41, 42 (3d Cir. 1992)).

The convictions on both the felon-in-possession charge for the gun in the house and the drug charges rested on a theory of constructive possession. Constructive possession occurs when "'[a] person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons.'" United States v. Garth, 188 F.3d 99, 112 (3d Cir. 1999) (quoting United States v. Blackston, 940 F.2d 877, 883 (3d Cir. 1991)). "Dominion and control are not established, however, by 'mere proximity to the [item], or mere presence on the property where it is located or mere association with the person who does control the [item].'" United States v. Jenkins, 90 F.3d 814, 818 (3d Cir. 1996) (quoting Brown, 3 F.3d at 680). "Such dominion and control need not be exclusive but may be shared with others." United States v. Davis, 461 F.2d 1026, 1035 (3d Cir. 1972).

In Brown, defendant Baltimore had a key to a "cut house" where large quantities of illegal drugs were found. Brown, 3 F.3d at 680-81. Although she referred to the building as "my own house," and her shorts and switchblade were found on the premises, id. at 680, we noted that none of her possessions were found in a room where drugs were found, that her fingerprints were not found on any drugs or drug paraphernalia, and that there was no other evidence that she exerted any control over the drugs or drug paraphernalia. Accordingly, we held that the evidence of Baltimore's proximity was insufficient to establish constructive possession. Id. at 683. Benjamin cites this case to argue that his proximity was no greater than Baltimore's, and that

6

therefore the evidence of constructive possession was similarly insufficient.

Proximity, however, is not the only factor that courts consider in determining whether a defendant had constructive possession. Indeed, in Jenkins this Court warned that "proximity alone is not enough, no matter how near that proximity is," and specified that "[i]t is a serious misreading of [Brown] to conclude that the degree of proximity of Baltimore or her clothing to the drugs was a controlling factor." Jenkins, 90 F.3d at 819-20. In that case, the defendant had been found in his boxer shorts at 1:30 a.m. on a couch with large quantities of drugs on a coffee table before him and a sawed-off shotgun on the floor, but the Court held that something more was required to show constructive possession. Id. at 821.

We now consider whether there was "more" evidence sufficient to show that Benjamin had the dominion and control necessary to establish constructive possession over the gun and drugs. In support of the felon-in-possession count, the Government contends that the jury was free to reject Esprit's testimony that the gun was for her sole use and that she kept it on her person at all times. Benjamin's control over the gun was demonstrated by the fact that it was found in the basement, along with the stereo and car equipment he used to repair cars outside the basement door. The gun box was found under the bed he shared with Esprit and the ammunition was stored in the closet of the room they shared. On the same side of the bed, agents discovered an envelope with documents tied to Benjamin. Furthermore, unlike in Brown and Jenkins where the defendants were merely shown to have been near drugs, there is direct evidence that Benjamin had used the gun in the past.

The Government further contends that Benjamin's dominion and control over the gun were demonstrated by Esprit's testimony that when Benjamin told her that his parole officer was at the door, she immediately hid the gun in the basement. The Government also argues that evidence that Benjamin was involved in the drug trade strengthened the conclusion that he had dominion and control over the gun. Based on this evidence, the District Court correctly held that,

7

viewed in the light most favorable to the Government, there was sufficient evidence to support the second gun possession charge.

In support of the drug convictions, the District Court noted that the drugs were found in a secreted location in the same area of the basement as Benjamin's stereo equipment and near the door he used to access the cars he was repairing. A scale, of which Esprit denied any knowledge, was found in the bedroom Benjamin and Esprit shared. Nitrile gloves were found in the kitchen and in a car registered to Benjamin's alias "James Burch." The jury was entitled to credit the Government expert's testimony that the notebook found beside Benjamin's bed in an envelope with paperwork bearing his name was, in part, a drug ledger. Although Benjamin argues that evidence showed that teenagers used the basement for recreation, suggesting that the drugs may have belonged to them, we are required to view the evidence in the light most favorable to the Government. The District Court correctly held that there was sufficient evidence on the drug charges, and thus, we will affirm.

B.

Benjamin argues that if this Court determines that there was sufficient evidence to uphold his conviction for possession of the gun in the house, then that charge should merge with his conviction for possession of the gun at the gun range, which he does not otherwise challenge on appeal, because the two charges are duplicative and violate the Double Jeopardy Clause. Benjamin did not raise this issue in the District Court, so we review for plain error. United States v. Miller, 527 F.3d 54, 70 (3d Cir. 2008). We must determine whether entry of the two separate felon-in-possession convictions "constitutes '(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" Id. (alteration in original) (quoting United States v. Vazquez, 271 F.3d 93, 99 (3d Cir. 2001)).

1.

We begin by considering whether the District Court's entry of separate convictions and sentences for possession of a firearm by Benjamin in violation of § 922(g)(1) constituted "error." To answer that question, we must first consider whether the § 922(g)(1) felon-in-possession crime is a continuing offense. This is an issue of first impression in this Court, though our sister Courts of Appeals that have considered this issue have uniformly held that it is a continuing offense. See, e.g., United States v. Ellis, 622 F.3d 784, 793-96 (7th Cir. 2010); United States v. Rivera, 77 F.3d 1348, 1351-52 (11th Cir. 1996); United States v. Horodner, 993 F.2d 191, 193-94 (9th Cir. 1993); United States v. Jones, 533 F.2d 1387, 1390-92 (6th Cir. 1976).

Possession is generally understood as a course of conduct. Rivera, 77 F.3d at 1351; Horodner, 993 F.2d at 193; Jones, 553 F.2d at 1391. Accordingly, "by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm." Jones, 553 F.2d at 1391. We thus join our sister Courts of Appeals in holding that the felon-in-possession crime in § 922(g)(1) is a continuing offense.

We now turn to the issue of whether Benjamin's two convictions for the possession of a single gun should merge into one. Because the felon-in-possession crime is continuing, charging and punishing a defendant twice for the same firearm requires an interruption in continuity of possession. Rivera, 77 F.3d at 1351 ("Where there is no proof that possession of the same weapon is interrupted, the Government may not arbitrarily carve a possession into separate offenses."); Horodner, 993 F.2d at 193 (acknowledging "that a new possession, separately chargeable, could begin if possession was interrupted"); Jones, 533 F.2d at 1391 (holding defendant Jones could only be convicted of one count under § 922(g)(1) when there existed "no proof that there was any interruption in the possession by Jones of the weapon"). More specifically, continuity must be interrupted by "relinquishment of both

actual _and_ constructive possession of the gun before it is reacquired." Ellis, 622 F.3d at 794.

The Government argues here that Benjamin's second gun possession conviction was based on constructive possession, which was interrupted when Benjamin was away from home because, while he was away from home, he would have lacked the ability to control the firearm that Esprit kept with her. As set forth earlier, physical proximity is not necessary to establish constructive possession. See Ellis, 622 F.3d at 795 (concluding that evidence that the defendant was able to "reacquire actual physical possession" of a gun from a fellow gang member suggested that the defendant had maintained constructive possession); Horodner, 993 F.2d at 193-94 (holding that even though the defendant left a gun at a repair shop, constructive possession remained because the defendant "retained the right to possess and control it"); cf. Garth, 188 F.3d at 113 (noting that access is not sufficient to show constructive possession). Additionally, under the theory of joint possession, "'dominion and control need not be exclusive but may be shared with others.'" United States v. Introcaso, 506 F.3d 260, 271 (3d Cir. 2007) (quoting Davis, 461 F.2d at 1035). The fact that Esprit had actual possession of the gun and may not have always been with Benjamin, then, does not preclude Benjamin's constructive possession of the same weapon.

The evidence supporting constructive possession — as explained more fully above — came not only from the presence of the gun in the couple's shared home, but also from Benjamin's participation in the gun purchase and Esprit's attempt to hide the gun when Benjamin warned her that his parole officer had arrived. See Davis, 461 F.2d at 1034-36 (holding that a jury could reasonably infer possession in part from evidence that occupants of house containing drugs had unsuccessfully attempted to destroy the drugs before police entered). The jury did not hear evidence that Benjamin's possession of the gun was ever interrupted, and the Government may not simply rely on the fact that Esprit and Benjamin were not always at home together to show an interruption in possession that would permit a second conviction. Without evidence that Benjamin relinquished constructive possession of the gun, there could be only one

10

possession conviction.  As a result, we hold that the District Court committed error when it convicted and punished Benjamin for two separate counts of possession of a firearm by a convicted felon.

2.

The Court must now determine whether the District Court's error was "plain."  In United States v. Tann, 577 F.3d 533 (3d Cir. 2009), this Court addressed the similar question of whether the district court committed plain error when it convicted the defendant of simultaneous possession of a firearm and ammunition at the same location, and concluded that it had.  Id. at 537-43.  Although the continuing nature of the conduct criminalized by the felon-in-possession statute is a matter of first impression for this Court, we hold that the District Court's error was plain.  See id. at 537-38 (reasoning that although its holding regarding the "allowable unit of prosecution under § 922(g) is a matter of first impression," the district court's error was plain).  In so holding, we reiterate that the Courts of Appeals that have addressed the question have uniformly held that § 922(g)(1) is a continuing offense.  Further, the Government does not contest this legal conclusion.

3.

We next consider whether the error affected Benjamin's substantial rights.  The Government argues that because Benjamin was sentenced to concurrent terms for the two felon-in-possession convictions, the only additional punishment stemming from the second conviction is a one hundred dollar special assessment, which does not affect Benjamin's substantial rights.  However, as this Court recognized in Tann, the Supreme Court has made clear that even when a second conviction does not add time to a defendant's sentence, "'the potential adverse collateral consequences'" of an unauthorized conviction "'may not be ignored'" when determining whether a defendant's substantial rights have been affected.  Id. at 538 (quoting Ball v. United States, 470 U.S. 856, 865 (1985)).  While the second conviction may not have had the "immediate practical effect" of increasing the length of his sentence, Benjamin

11

does risk additional adverse consequences due to the second conviction, such as delayed parole, increased social stigma, or even a higher sentence under a recidivist statute if he were convicted of any future crimes. See Tann, 577 F.3d at 540. We therefore follow Tann, and hold that Benjamin's substantial rights were affected by the second conviction.

4.

Having determined that the error below was plain and affected Benjamin's substantial rights, we now examine whether the District Court's error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" such that this Court should exercise its discretion to correct the error. United States v. Olano, 507 U.S. 725, 732 (1993) (quotation marks and citations omitted). The arguably limited nature of the additional assessment does not erase the fact that Benjamin was saddled with an unauthorized conviction with the potential to cause him serious adverse consequences. "[A]ny additional unauthorized conviction and its accompanying special assessment . . . seriously calls into question the fairness and integrity of judicial proceedings." United States v. Lewis, 660 F.3d 189, 196 (3d Cir. 2011). We hold that leaving the error uncorrected would seriously and detrimentally affect the fairness, integrity and public reputation of these proceedings and, therefore, it is appropriate for this Court to use its discretion to grant relief.

C.

Benjamin argues that the District Court erred in allowing repeated references to his parole status in violation of Federal Rule of Evidence 404(b)(1), which prohibits the use of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." We review the District Court's decision to admit evidence for abuse of discretion. United States v. Cruz, 326 F.3d 392, 394 (3d Cir. 2003).

We have held that Rule 404(b) is a rule of inclusion rather than exclusion. United States v. Kellogg, 510 F.3d

12

188, 197 (3d Cir. 2007). "To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010).[2]

We hold that Benjamin's parole status was admitted for a proper purpose under Rule 404(b) as "helpful background." See id. at 247 ("[A]llowing the jury to understand the circumstances surrounding the charged crime — completing the story — is a proper, non-propensity purpose under Rule 404(b)."). As the District Court noted, the trial could not have been conducted without the jury hearing that Benjamin was on parole. The Government correctly argues that the evidence of Benjamin's parole status was relevant to the jury's understanding of why the search took place. The Government further correctly argues that the evidence was relevant to explain Benjamin's motive for using an alias, for using gloves to hide his drug trafficking activity, and to explain Esprit's testimony that she hid the gun because she knew Benjamin was not allowed to be around firearms as a condition of his parole. See Cruz, 326 F.3d at 395 ("Here the government articulated the logical inferences that render Cruz's parole status relevant to establishing Cruz's motive, intent and method of concealing his illegal drug activity in order to avoid the risk of parole revocation. A defendant's parole status has been held to be probative of why a defendant would take extra steps to hide his criminal activity."). The probative value of this evidence is not substantially outweighed by whatever limited prejudice may have been caused by the references to Benjamin's parole status, which

---

[2] Benjamin did not request such a limiting instruction and does not suggest that the District Court should have given such an instruction sua sponte. See generally Ansell v. Green Acres Contracting Co., 347 F.3d 515, 526 (3d Cir. 2003) (holding that the defendant had waived any challenge to the district court's failure to give a limiting instruction addressing Rule 404(b) evidence by failing to request one at trial or raise the issue on appeal).

the District Court was careful to minimize by, for instance, preventing the Government from presenting evidence of Benjamin's underlying drug trafficking convictions.

We hold that the District Court did not abuse its discretion in admitting evidence that Benjamin was on parole, and we will affirm on this ground.

D.

Benjamin argues that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to him under the Commerce Clause in order to preserve the issue for Supreme Court review.  He correctly recognizes that his constitutional arguments are foreclosed by our precedent in United States v. Singletary, 268 F.3d 196 (3d Cir. 2001).  Therefore, we need not discuss his constitutional challenges any further.

III.

Based on the foregoing, we will remand this case to the District Court with instructions to vacate the sentence on Benjamin's conviction under § 922(g)(1) for possession of the gun in his house and to merge the two convictions under § 922(g)(1) into one conviction.  We will affirm the judgment of the District Court in all other respects.