**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-2876, 20-2912, and 20-2938
_____

UNITED STATES OF AMERICA

v.

ANTOINE CLARK a/k/a RICH
     Appellant in No. 20-2876
GERALD SPRUELL
     Appellant in No. 20-2912
DANIEL ROBINSON,
     Appellant in No. 20-2938
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Nos. 2-19-cr-00015-001, 2-19-cr-00015-002, and 2-19-cr-00015-004)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 24, 2023

Before: HARDIMAN, KRAUSE, and MATEY, *Circuit Judges.*

(Filed: March 8, 2023)
_____

OPINION*
_____

---

 * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

MATEY, *Circuit Judge*.

Appellants Antoine Clark, Gerald Spruell, and Daniel Robinson challenge their convictions and sentences for drug trafficking. Seeing no prejudicial error, we will affirm the District Court's judgments.

## I.

Clark, Spruell, Robinson, and six other defendants were charged with conspiracy to distribute cocaine base ("crack") and heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and various other drug-related offenses. The charges stemmed from a drug trafficking operation using a phone (the "4400 phone") to receive and arrange orders for crack and heroin.

While Appellants' co-conspirators pleaded guilty to the charges against them, Clark, Spruell, and Robinson chose a jury trial and were convicted on all counts. Each received a sentence of at least 25 years' imprisonment and each sought post-trial relief. The District Court denied Appellants' motions, and this consolidated appeal followed. Finding no prejudicial error, we will affirm.[1]

## II.

Appellants, both collectively and individually, challenge wiretap evidence obtained from the 4400 phone, the sufficiency of the Government's evidence in support of their conspiracy convictions, and the calculation of their sentences. We address those arguments, and the standard under which we review them, in turn.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

## A.      Title III Wiretap

Clark and Robinson argue the District Court erred when it denied the motion to suppress the Title III wiretap of the 4400 phone.[2] They claim the Government failed to establish necessity for the wiretap. The necessity requirement, 18 U.S.C. § 2518, ensures that phone surveillance "be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications." *United States v. Bailey*, 840 F.3d 99, 114 (3d Cir. 2016) (quoting *United States v. Giordano*, 416 U.S. 505, 515 (1974)). Because wiretaps are "not to be routinely employed as the initial step in criminal investigation," *id.* (quoting *Giordano*, 416 U.S. at 515), the Government's wiretap application must show that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous," *id.* (quoting 18 U.S.C. § 2518(3)(c)). But the Government need not "exhaust all other investigative procedures before resorting to" a wiretap. *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997) (citations omitted).

Here, the Government carried its burden under Title III. The affidavit in support of the wiretap application adequately identified alternative investigative techniques and explained the reasons for their insufficiency. Confidential informants, for instance, could not infiltrate the higher ranks of Appellants' organization, while physical surveillance and pole cameras provided only limited information. Trash collection at Appellants'

---

[2] We review the District Court's approval of a wiretap application for clear error, "while exercising plenary review over its legal determinations." *United States v. Bailey*, 840 F.3d 99, 113 (3d Cir. 2016).

residences would have been impractical since garbage was commingled in communal dumpsters. And inquiries into Appellants' financial records proved inconclusive. Even if the Government failed to "exhaust *all* . . . investigative procedures," *id.* (emphasis added), it has adequately demonstrated that "normal investigative procedures" have failed or appear "unlikely to succeed if tried." 18 U.S.C. § 2518(3)(c). Nothing more is required.

## B.    Sufficiency of the Evidence

Spruell and Robinson also challenge the sufficiency of the Government's evidence in support of their conspiracy convictions.[3] They raise three issues: (1) Spruell contends that the evidence failed to show that he and his co-defendants were anything more than "independent contractors"; (2) Spruell and Robinson claim the Government improperly aggregated drug weights to meet the threshold of 21 U.S.C. § 841(b)(1)(A); and (3) Robinson challenges the Government's evidence of the drug weights distributed, based on testimony of FBI Agent Charles Simpson. None of these claims is availing.

To prove a conspiracy to distribute drugs, the Government must show that Appellants had (1) "a shared unity of purpose," (2) "an intent to achieve a common goal," and (3) "an agreement to work together toward that goal." *Bailey*, 840 F.3d at 108 (citation omitted). At trial, the Government presented ample evidence that for over two years Appellants shared a phone to service a joint customer base for narcotics, working

---

[3] Our review of the District Court's sufficiency determination is "highly deferential," and we view "the evidence in the light most favorable to the prosecution." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424, 430 (3d Cir. 2013) (en banc) (quotation omitted).

around the clock, with Spruell even describing himself as the "night man." Spruell Opening Br. 14. Recordings of conversations from the 4400 phone confirmed as much, revealing that Appellants arranged shift changes to cover phone orders, facilitated drug sales as a group, and warned one another of law enforcement detection. All of which provided a more than sufficient basis to support the jury's finding of conspiracy.[4]

The Government also properly aggregated drug weights to support Appellants' drug-related convictions. Along with conspiracy, Appellants were charged and convicted under 21 U.S.C. § 841(b)(1)(A), which penalizes the manufacturing, distribution, or possession with intent to manufacture or distribute at least one kilogram of heroin and at least 280 grams of crack. Spruell and Robinson allege that the Government, to meet that threshold, improperly aggregated Appellants' individual drug transactions in violation of our precedent. But the case on which they rely, *United States v. Rowe*, 919 F.3d 752 (3d Cir. 2019), does not apply. In *Rowe*, we rejected aggregation of drug weights as to a single defendant arrested for selling about 200 grams of heroin but convicted of distributing and possessing with intent to distribute 1,000 grams, meeting the threshold of § 841(b)(1)(A). *Id.* at 756. Spruell and Robinson, unlike the defendant in *Rowe*, were part of a conspiracy, not independent contractors in the criminal enterprise. Here, the

---

[4] Spruell and Robinson also challenge the Government's occasional references during trial to non-trial co-defendants as co-conspirators. But even if the District Court abused its discretion in allowing the co-conspirator language, in light of Appellants' conspiracy charges, any error was harmless, as the jury was properly instructed on the elements of conspiracy as well as on the Government's burden of proof. And we presume that jurors "follow the instructions given them by the court." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014).

Government also charged and established a conspiracy involving Spruell, Clark, and Robinson—a distinction we addressed in *United States v. Williams*, 974 F.3d 320 (3d Cir. 2020). There, we confirmed that drug quantities involved in 21 U.S.C. § 841(a) violations involving multiple conspirators "may be aggregated for determining the mandatory minimum of any one conspirator," as long as the quantities were "reasonably foreseeable" to that conspirator. *Id.* at 366. Nothing in the record or in the caselaw suggests that the aggregation theory was misapplied below.[5] Spruell and Robinson, as members of the conspiracy, were responsible for the entire, reasonably foreseeable volume of drugs distributed among the group to its customers—a result on which *Rowe* has no effect.

Nor does the evidence point to any error in the Government's calculation of the drug quantities stemming from the conspiracy. Robinson takes particular issue with FBI Agent Simpson, who testified about his extensive review of six weeks of wiretapped phone calls comprising 40 "shifts" on the 4400 phone. Using his findings from that

---

[5] Relatedly, Robinson also argues the jury instructions aggregating the weights constructively amended the superseding indictment in violation of the Fifth Amendment. Not so. Because this objection was not preserved at trial, we review it for plain error. *United States v. Boone*, 279 F.3d 163, 174 n.6 (3d Cir. 2002). The District Court explained to the jury that should it find Appellants guilty of conspiracy (based on the elements the Court outlined), it should subsequently consider "all the crack that the members of the conspiracy possess[ed] with *intent to distribute, distributed or intended to distribute*, and which was reasonably foreseeable to [Robinson]." Robinson App. 2750 (emphasis added). The instruction as to the quantity of heroin was substantively identical. The instruction simply made clear the jury could consider the drugs Appellants distributed *and* the drugs they possessed with intent to distribute—all offenses charged in the indictment. *See Williams*, 974 F.3d at 366. There was no constructive amendment.

investigation, Agent Simpson extrapolated the quantities and proportion of drugs sold during those shifts to the full two-year stretch of the conspiracy. Robinson claims that methodology was speculative and arbitrary, but he ignores the plethora of evidence supporting Agent Simpson's testimony. The Government also presented proof of Appellants' participation in 20 controlled drug purchases, showed evidence of Appellants' coordination of a large re-supply of crack, and offered testimony from a co-defendant. All of which combined, even without Agent Simpson's testimony, proved that Appellants' drug quantities exceeded the threshold of 21 U.S.C. § 841(b)(1)(A). Agent Simpson's testimony merely "tied together and confirmed what the underlying evidence had already established." Clark App. 30.[6]

## C.      Sentencing Calculations

Spruell and Robinson raise a series of challenges to their sentences. But none show prejudicial error.

First, Spruell argues that his prior drug convictions in Pennsylvania do not qualify as § 841(b)(1)(A) predicates because Pennsylvania's drug schedules are broader than the

---

[6] The same conclusion applies to arguments raised by Spruell and Robinson challenging the summary drug weight evidence used by the District Court at sentencing. As the District Court explained, its findings drew from the evidence adduced at trial, including Agent Simpson's testimony, the "hundreds of recordings" showing Appellants' drug activities, and the thousands of calls intercepted about drug sales. Clark App. 28–29. By any measure, Appellants fail to establish that the Court's findings were "completely devoid of minimum evidentiary support displaying some hue of credibility," as they must do to succeed. *United States v. Williams*, 898 F.3d 323, 332 (3d Cir. 2018) (citation omitted).

offenses covered by the Controlled Substances Act ("CSA").[7] We have concluded 35 Pa. C.S. § 780-113(a)(30) is divisible, so we apply the modified categorical approach. *United States v. Abbott*, 748 F.3d 154, 158 (3d Cir. 2014).

Section 780-113(a)(30) prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance." As the Supreme Court has instructed, any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are considered elements of the crime. *Abbott*, 748 F.3d at 159 (quoting *Alleyne v. United States*, 570 U.S. 99, 111 (2013)). Under Pennsylvania law, the type of controlled substance involved in the offense alters the prescribed range of penalties, meaning "the type of drug" is an element of the crime. *Id.*

So we look to the charging document to determine which controlled substance (i.e., which element of the statute) was involved in the defendant's offense. Spruell's prior conviction for cocaine[8] qualified as a "serious drug felony" under § 841(b)(1)(A), and thus a predicate offense for a sentencing enhancement under § 841(b)(1)(A).

---

[7] We exercise plenary review over legal questions, including challenges to the application of § 841(b) enhancements. *See United States v. Henderson*, 841 F.3d 623, 626 (3d Cir. 2016) (citation omitted).

[8] The Government acknowledges that Spruell's marijuana offense under 35 Pa. C.S. § 780-113(a)(30) was not a serious drug felony because it carried a maximum term of imprisonment of less than ten years. *See* 35 Pa. C.S. § 780-113(f)(1), (2); §§ 780-104(1)(iv), 780-102(b). That makes the enhancement in § 841(b)(1)(A) inapplicable. *See* 21 U.S.C. §§ 802(57), 841(b)(1)(A); 18 U.S.C. § 924(e)(2). As a result, Spruell's mandatory minimum term of imprisonment was 15 years, not 25 years as calculated in the presentence report and adopted by the District Court at sentencing. But as we discuss below that error is harmless. The enhancements in § 841(b) did not alter Spruell's Guidelines range or his actual sentence because Spruell's controlling non-career offender offense level was higher than the career offender calculations.

Next, Spruell questions the career offender offense level calculation in his presentence report. As the Government concedes, the calculation was improperly based on his conspiracy conviction. *United States v. Nasir*, 17 F.4th 459, 468, 469 n.10 (3d Cir. 2021) (en banc) (holding that inchoate crimes, including conspiracy, are not predicate offenses for a career offender enhancement). But the error played no role in the District Court's computation of Spruell's sentence. Under the sentencing guidelines, the career offender offense level governs the sentencing calculation only if it is *greater* than the offense level otherwise applicable. U.S.S.G. § 4B1.1(b). Spruell's *non-career* base offense level of 38 was greater than the incorrectly calculated career offender offense level of 37. So the latter was a nullity in the District Court's sentencing decision.[9]

Finally, Spruell argues that the District Court erred in computing his criminal history category. He claims that two prior offenses for which he was arrested on the same day—for a drug crime and for threatening a police officer—should have been treated as only one conviction for purposes of his criminal history score. Spruell's position is foreclosed by the clear language of U.S.S.G. § 4A1.2(a)(2). Prior sentences are counted separately under that provision "if the sentences were imposed for offenses that were

---

[9] Robinson made a similar argument on Reply. Normally we find such arguments forfeited. *In re Surrick*, 338 F.3d 224, 237 (3d Cir. 2003). But since the Government acknowledged the mistake, we will address the error in Robinson's career offender offense level calculation. Robinson's non-career offender offense level was 36, producing a Guidelines range of 324 to 405 months, below the range the Court considered (360 months to life). This error is harmless because the Court sentenced Robinson to 324 months, the bottom of the correct Guidelines range. Given the Court's downward variance, there is no reasonable probability that Robinson's sentence would have been different had the correct Guidelines range applied.

separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense)." U.S.S.G. § 4A1.2(a)(2). Spruell was arrested for possessing with the intent to deliver narcotics, and after arriving at the police station for processing, threatened several officers—a separate crime for which he was also charged. So the record is clear that Spruell was arrested for the drug offense *prior to* committing the second offense, threatening the officers. His prior sentences were properly counted separately.

## III.

For these reasons, we will affirm the judgments of the District Court.